UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| J & J SPORTS PRODUCTIONS, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01467-DML-TWP |
| | ) | |
| LOYDA CARRANZA and | ) | |
| CARRANZA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## Order on Motions for Summary Judgment

Plaintiff J & J Sports Productions, Inc. (J & J Sports) brought this action against defendants Carranza, Inc. d/b/a Los Chilaquiles ("Los Chilaquiles") and its principal and sole shareholder, Loyda Carranza, alleging the defendants' illegal exhibition of a pay-per-view boxing match at Los Chilaquiles, a restaurant owned and operated by Carranza, Inc. J & J Sports seeks summary judgment against both Los Chilaquiles and Loyda Carranza. (Dkt. 25) In response, the defendants filed their own motion for summary judgment (Dkt. 29) in which they (1) concede Los Chilaquiles is liable, (2) request a judgment that Loyda Carranza is not liable, and (3) contend that only minimal damages should be awarded.[1]

---

[1] The defendants denominate their filing a motion for summary judgment, but except to the extent it asks for judgment in Mr. Carranza's favor, it is in the nature of a response in opposition to J & J Sports's motion. J & J Sports correctly points out that the filing does not comply with the requirements of Local Rule 56-1, but the court under these circumstances will exercise its discretion to rule on the merits. *See* S.D. Ind. L.R. 56-1(l). The significance of the defendants' procedural vehicle for responding to J & J Sports's motion for summary judgment is the defendants' acknowledgement that all the issues in this case (liability and damages) can be

1

**Undisputed Facts**

The evidentiary materials submitted by the parties establish the following undisputed facts.[2]

J & J Sports owns the exclusive commercial distribution rights to *Star Power: Floyd Maywether, Jr. v. Victor Ortiz Championship Fight Program* (the "Program"). The Program was broadcast nationwide on Saturday, September 17, 2011. (Gagliardi Aff., Dkt. 25-1, ¶ 3)

On September 17, the Program was exhibited at Los Chilaquiles after hours to a crowd of 37 or 38 people after the restaurant had closed. (Davis Aff., Dkt. 27-1, p. 2) Mr. Carranza is an officer and sole shareholder of Carranza, Inc. (Los Chilaquiles). Mr. Carranza had the right and ability to supervise the activities of Los Chilaquiles on the night of the fight. (*See* Dkt. 28-1.) Mr. Carranza did not pay a commercial licensing fee to the plaintiff, nor did he otherwise have permission to broadcast the Program at his commercial establishment. The commercial licensing fee to broadcast the Program for an establishment the size of Los Chilaquiles was $2,200. (Gagliardi Aff., Dkt. 25-1, ¶¶ 7-8)

---

determined on the basis of the parties' summary judgment submissions. J & J Sports has taken this position too, as explained in section A. of the Analysis. *See* Dkt. 25-2.

[2] Other than challenging the defendants' procedural compliance with the local rule and the personal knowledge of their affiant on one fact (*see* note 3 *infra*), J & J Sports does not dispute the defendants' version of the facts, and indeed must accept that version for purposes of its motion for summary judgment.

According to Mr. Carranza's affidavit, the restaurant closed at 9:00 p.m. on the evening the Program aired. The sign and registers were turned off, and no money exchanged hands after 9:00 p.m. Mr. Carranza had agreed to host a birthday party at Los Chilaquiles after hours for his nephew and a friend. They invited more friends to watch the fight at the restaurant after closing. (Carranza Aff., Dkt. 29, ¶¶ 3-8) The Program was purchased through Mr. Carranza's residential satellite (Directv) account and his nephew brought a receiver to the restaurant to view the fight. (*See* Dkt. 28-1, p. 5; 28-2, p. 8.) There was no advertising to the public that the Program would be shown at the restaurant.

At 11:55 p.m., an investigator hired by the plaintiff, Teresa Davis, entered Los Chilaquiles and observed the Program being shown. She counted the number of patrons inside the restaurant at 37 or 38. (Davis Aff., Dkt. 27-1, p. 2) She was not charged a cover fee to enter.

Mr. Carranza claims that Ms. Davis was the only person in the restaurant during the fight unknown to himself, Carlos, or his friends.[3] Ms. Davis was told that the gathering was a private event, but she insisted on staying for a while. Ms. Davis attempted to order a drink but was told that no money was being accepted for food or drinks. After her insistence to purchase a drink, she was given a free one. She was eventually asked to leave and did so. Her visit lasted between fifteen and

---

[3] J & J Sports challenges this assertion in Mr. Carranza's affidavit as not grounded in his personal knowledge. Mr. Carranza has attested to his personal knowledge of all the matters in his affidavit, and whether that particular attestation is indeed true need not be decided here because that fact is not material to the court's determination of the questions presented.

3

twenty minutes. Mr. Carranza had never shown a fight in the restaurant before this occasion and has not shown a fight since. (Carranza Aff., Dkt. 29, ¶¶ 10-11)

As a result of the alleged piracy, J & J Sports filed a complaint against the defendants, claiming violations under the Cable Communications Policy Act (CCPA), particularly of 47 U.S.C. § 605 and § 553, as well as a state law claim of conversion. Plaintiff asks for maximum statutory damages, enhanced damages, and attorney's fees and costs.

The defendants admit the liability of Los Chilaquiles for the violation of section 605, but they deny that Mr. Carranza can be held individually liable under the statute. Defendants further contend that J & J Sports is entitled only to minimum damages because Los Chilaquiles's violation of section 605 was not committed willfully for financial gain.

## Analysis

A. <u>Conversion Claim</u>

As a preliminary matter, the court notes that J & J Sports's complaint includes a tort claim for conversion, and it seeks a final judgment for damages in connection with its summary judgment motion. (*See* Proposed Judgment, Dkt. 25-2.) But its motion and brief do not mention this claim, so it "fails absent a developed analysis of the conversion issue." *J & J Sports Productions, Inc. v. Zarco*, 2013 WL 4829222 at *4 (S.D. Ind. Sept. 9, 2013) (citing *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived.")).

B. <u>Statutory Liability Generally</u>

J & J Sports alleges violations of 47 U.S.C. § 605 and § 553. It correctly notes, however, that it may not recover under both statutes, as they target two different types of piracy. *United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996). Section 605 governs the interception of cable television through the air, while section 553 governs interception of cable television via a wired cable network. *Id*. Los Chilaquiles admits it obtained the Program through a satellite provider, Directv, and J & J Sports agrees that section 605 therefore governs in this case.

That statute in relevant part states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). J & J Sports must demonstrate that a defendant unlawfully exhibited, published, received, or divulged the privileged communication. *Id*. Section 605 is a strict liability statute, as the parties agree, and whether a defendant acted knowingly or not is relevant only to the question of damages. *Id*. *See also J & J Sports Productions, Inc. v. Delgado*, 2012 WL 371630 at *4 (E.D. Cal.

5

Feb. 3, 2012) (whether the defendant acted knowingly is irrelevant for determining liability).

The defendants admit liability for the violation of § 605 with regards to Los Chilaquiles and accede to the court to entering judgment against the corporation. The court is therefore left only with the questions of Mr. Carranza's individual liability and damages.

C. Mr. Carranza's Individual Liability

The parties have devoted significant attention in their summary judgment briefs to whether Mr. Carranza can be vicariously liable for Los Chilaquiles's interception of the fight.[4] These arguments miss the mark. Under the plain language of section 605: "No *person* not being authorized by the sender shall intercept any radio communication and *divulge or publish* the existence, contents, substance . . . of such intercepted communication to any person." 47 U.S.C. § 605(a) (emphasis added). The undisputed facts here demonstrate that notwithstanding

---

[4] A number of courts have addressed the question of when a person can be *vicariously* liable for the conduct of *others* under section 605. That analysis has its genesis in a Second Circuit Court of Appeals decision in the context of the Copyright Act, *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.,* 118 F.3d 955 (2d Cir. 1997). The *Softel* inquiry for vicarious liability depends on whether an individual had "a right and ability to supervise the violations and that he had a strong financial interest in such activities." *See, e.g., J & J Sports Productions v. Ribeiro,* 562 F. Supp. 2d 498, 501 (S.D.N.Y. 2008). Other courts have questioned whether this Copyright Act test should be extended to the Cable Communications Policy Act. *See J & J Sports Productions v. Torres,* 2009 WL 1774268, at *4 (M.D. Fla. June 22, 2009).

involvement by his nephew Carlos, Mr. Carranza himself was also a person who intercepted the communication and exhibited it at his restaurant.

Mr. Carranza agreed to host the party. (Carranza Aff., Dkt. 29, ¶ 8) He purchased the Program on his own residential account. *Id.* ¶ 7. He was present at the restaurant during and after Ms. Davis made her visit. *Id.* ¶ 12. In contrast to the facts of some of the cases Mr. Carranza cites, he was directly involved in purchasing and exhibiting the Program.[5]

For these reasons, the parties' discussion of *vicarious* liability (based on factors developed under copyright infringement statutes) is not pertinent; Mr. Carranza's liability under section 605 is direct. J & J Sports is therefore entitled to judgment as a matter of law against Mr. Carranza, as well as against Los Chilaquiles.

D. Statutory Damages

Under section 605, a plaintiff may recover actual or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i)(II). J & J Sports has requested statutory damages, which range from $1,000 to a maximum of $10,000, as the court considers just. *Id.* J & J Sports also seeks enhanced damages, which will be discussed below, that permit an increase in damages up to $100,000 under § 605(e)(3)(C)(ii). The court also notes that, while the defendants do not request it, section 605 allows for minimum damages: "In any case where the court finds that the violator was not aware and

---

[5]  Mr. Carranza, however, was indisputably acting as an agent of Los Chilaquiles, making Los Chilaquiles liable too.

7

had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. § 605(e)(3)(C)(iii).

J & J Sports requests maximum statutory damages of $10,000. Los Chilaquiles argues that "minimal damages" are appropriate and that enhanced damages are not warranted. For his part, Mr. Carranza simply argues that he has no liability at all and was not aware of the violation, arguments the court has rejected in its liability analysis. The court will consider them on the question of damages, however.

There is little guidance in setting statutory damages under section 605, but courts have considerable discretion on this matter. *J & J Sports Productions, Inc. v. McCausland*, 2012 WL 113786 (S.D. Ind. Jan. 13, 2012). Some courts use a formula based on the number of patrons present, *Joe Hand Promotions, Inc. v. L.A. Moon LLC*, 2013 WL 633572 (W.D. Wis. Feb. 20, 2013), while others award a flat sum per violation. *McCausland*, 2012 WL 113786 at *3. J & J Sports has asked the court to follow the reasoning in *McCausland* and use the flat sum approach, taking into account the goal of specific and general deterrence in the damage award.

In *McCausland,* the defendant defaulted on the allegations that he showed a fight in violation of section 605 to 12-17 people during normal business hours. *Id*. at *2-3. The court found that a damage award based on the limited number of patrons who viewed the fight would send a "comparatively weak deterrent signal." *Id*. at *3. The court chose to impose the maximum statutory damages award of $10,000. *Id*.

8

But this decision is not particularly instructive because the court merely granted the plaintiff's damage request after the defendant failed to respond.

The court does agree with J & J Sports, however, that an award at the low end of the range, or one approximating the licensing fee that should have been paid, does not further the goals of deterrence—either as to the defendants specifically or would-be offenders generally. *See id.*

J & J Sports established that the fee for Los Chilaquiles to broadcast the Program legally would have been $2200. The court also takes into consideration that Los Chilaquiles did not use the Program to reap any direct gain, as it did not collect a cover charge nor payment for food and drinks. *See J & J Sports v. Zarco,* 2013 WL 4829222 at *3-4 (S.D. Ind. Sept. 9, 2013). In *Zarco*, a bartender at a restaurant broadcasted a fight after the restaurant had closed. *Id.* at *1. The bartender and one friend were the only people in the restaurant other than the investigator sent by J & J Sports. *Id.* No customers were in the restaurant and there were no advertisements for the exhibition of the fight. *Id.* J & J Sports asked for the maximum $10,000 in statutory damages, but the court stated: "Given that the restaurant was closed, there were three people watching the program on one television, and no flyers publicizing the event, a more modest award is appropriate." *Id.* at *3. After a damages hearing, the court awarded statutory damages in the amount of $2,249.95 plus costs and fees.

Under all these circumstances, the court determines that statutory damages in the amount of $4,400 (twice the fee) are appropriate.

9

E. <u>Enhanced Damages</u>

J & J Sports also requests enhanced damages under section 605(e)(3)(C)(ii), which states in relevant part:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

47 U.S.C.A. § 605(e)(3)(C)(ii). The Eleventh Circuit has used the Supreme Court's definition of "willful" in connection with this provision to mean showing "disregard for the governing statute and an indifference to its requirements." *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 851 (11th Cir. 1990) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). No Seventh Circuit decisions guide the enhanced damages inquiry, but district courts have looked to a range of factors, including: "(1) the number of violations; (2) defendant's unlawful monetary gains; (3) plaintiff's actual damages; (4) whether defendant advertised for the event; and (5) whether the defendant collected a cover charge on the night of the event." *McCausland*, 2012 WL 113787 at *4; *see also Kingvision Pay-Per-View Ltd. v. Rodriguez*, 2003 WL 548891 at *2 (S.D.N.Y. Feb. 25, 2003). Courts also must consider deterrence in their award, but should not impose a penalty so severe that it puts the defendant out of business. *McCausland*, 2012 WL 113787 at *4; *see also Garden City Boxing Club, Inc. v. Polanco*, 2006 WL 305458 at *5 (S.D.N.Y. Feb. 7, 2006).

The defendants argue that enhanced damages are inappropriate because no money was made the night of the violation. They contend that they were not aware that their actions constituted a violation and that it certainly was not for purposes of direct or indirect commercial advantage or private gain. J & J Sports contends that, at minimum, there was an indirect commercial advantage gained by exposing 37-38 people to the restaurant and advertising it as a place to come in the future. J & J Sports cites *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles*, 920 F. Supp.2d 659 (E.D. Va. 2013), in support of its argument that the act of showing the Program, even without charging for it, constitutes a willful violation for commercial advantage and private gain. The violation in *Wing Spot,* however, occurred during regular business hours with approximately 40 paying customers viewing the fight. *Id*. at 664. No similar commercial advantage is established by the facts of this case. The facts here more closely resemble the facts in *J & J Sports v. Pombo,* 984 F.Supp. 2d 1042 (E.D. Cal. 2013), in which enhanced damages were not assessed.

Having considered the facts presented here and the factors courts have considered, the court declines to make any award of enhanced damages.

F. <u>Costs and Fees</u>

Finally, section 605 provides that a court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii). As the prevailing party, J & J Sports is entitled to an award of costs and fees. It must file its petition for them as provided by Local Rule 54-1. The defendants must file any response to the petition within 21

days thereafter, and the parties are encouraged to use this period to attempt to reach agreement as to amount.

## Conclusion

J & J Sports's motion for summary judgment (Dkt. 25) is GRANTED, and defendants' motion for summary judgment (Dkt. 29) is DENIED as set forth above. J & J Sports's conversion claim is DISMISSED with prejudice because J & J Sports has requested final judgment but has not addressed its conversion claim. A separate judgment will be entered in favor of J & J Sports and against both defendants in the amount of $4400.00. J & J Sports may file any request for costs and fees as provided by Local Rule 54-1.

So ORDERED.

Date: March 27, 2015

*[signature: Debra McVicker Lynch]*

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system